# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**RECEIVED**

OCT 0 7 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **BURNYSS PERRY,** ) | |
| ) | |
| Plaintiff, ) | **1:15-cv-08905** |
| ) | **Judge Rebecca R. Pallmeyer** |
| **V.** ) | **Magistrate Judge Sidney I. Schenkier** |
| ) | |
| **ILLINOIS DEPARTMENT OF** ) | **Trial by Jury Demand** |
| **CORRECTIONS,** an entity organized and ) | |
| existing under the laws and statutes of Illinois; ) | |
| **SALVADOR GODINEZ** sued in his individual ) | |
| capacity as agent and servant of Illinois ) | |
| Department of Corrections; **GLENN AUSTIN,** ) | |
| Warden of Illinois Department of Corrections, ) | |
| Austin sued in his individual capacity as agent ) | |
| and servant of Illinois Department of Corrections, ) | |
| **RITA ROSSI** sued in her individual capacity as ) | |
| agent-servant of Illinois Department of ) | |
| Corrections, ) | |
| Defendants. ) | |

## COMPLAINT AT LAW

Now comes Plaintiff, **Burnyss Perry**, referred to as (**"Perry"**) as Plaintiff to this action; by and acting **pro-se,** complains of defendants, **Illinois Department of Corrections**, referred to as ("IDOC") as defendant to this action; **Salvador Godinez**, referred to as ("Godinez") as defendant to this action; **Glenn Austin** referred to as ("Austin") as defendant this action; **Rita Rossi**  Referred to as ("Rossi") as defendant to this action; and stated the following reasons:

### A.    JURISDICTION AND VENUE

1.    This court has jurisdiction over plaintiff's federal claims pursuant to **28 U.S.C.A. Section 1331, 1343(3), 1343(4),** which vests redress of plaintiff's claims of being deprived of her constitutional rights to have been secure in his person due to defendants wrongful imprisonment caused him to loss of his constitutional rights and liberty, without due process of law.

2.    The Fourteenth Amendment Provisions create Federal Question Jurisdiction and are actionable pursuant to Federal statutes  **42 U.S.C.A. Section 1981, 1983 and 1985 (3).**

1

3. Plaintiff also invoked the court's supplementary jurisdiction authority to exercise pending jurisdiction over state law and common law claims that arise out of the same transaction and occurrence in that they arise from the same case.

4. That the statutory authority is **28 U.S.C.A. Section 1367(a)** and plaintiff's state law claims included violation of the Illinois Civil Rights Act.

5. The Federal Court have authority to hear and decide state law claims: False imprisonment, intentional infliction emotional distress.

6. Defendants, **IDOC** and its apparent agents, Salvador Godinez, Glenn Austin and Rita Rossi, they was acting under color of state law. Defendants did deprive Perry of his liberty and equal protection of the laws and due process.

7. Venue is proper pursuant to **28 U.S.C.A. Section 1391 (b),** as all the even occurred in Cook County, Chicago, Illinois which is within the United States District Court for the Northern District of Illinois, Eastern Division.

## B.  42 U.S.C.A. SECTION 1981, 1983 and 1985(3)

## C.  CIVIL ACTION FOR VIOLATIONS OF DEPRIVATION

8. Every person who, under color of any statute, ordinance, regulation, custom, policy or usage of any state or territory of the District of Colombia, subjects, or causes to be subjected, any Citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges of communities secured by the constitution law shall be liable to the party injured in an action at law, suit in equity or other person proceeding for redress for the purpose of this section, any Act of Congress applicable exclusively to the District of Colombia shall be considered to be a statue of the District of Columbia.

## D.  JURY DEMAND

## E.  CITIZENSHIP OF THE PARTIES

2

9. Plaintiff, **Burnyss Perry**, was at all relevant times was an African American ("Black") Citizen of the United States of America and resided in the City of Chicago, County of Cook, State of Illinois.

10. **The IDOC** an entity organized and existing under the laws and state of Illinois. At all material times to this cause of action, **IDOC**, is the employer of Salvador Godinez are responsible for his wrongful acts of Godinez while employed by **IDOC**, and was acting within the scope of his employment.

11. Defendant, Godinez, at all relevant times, upon information and believed to be a resident of the State of Illinois. Defendant Godinez was at all times material hereto was a duly appointed decision maker for the Illinois Department of Corrections as its apparent agent-servant of **IDOC**.

12. Upon information and believe defendant, Godinez at all times was agent-servant hereto this cause of action. The **IDOC** are responsible and can be held liable for his wrongful acts of its agent-servant, employee of **IDOC**, while employed by **IDOC** Godinez was acting within the scope of his employment, Godinez was performing ministerial acts in violation of **IDOC** of due process. Godinez sued in his individual capacity.

13. Defendant, Godinez, who were duly appointed and anointed with all the power and cloaked with the authority to function under direction of **IDOC** and **Glenn Austin** and his position and under color and pretense of the statutes, ordinances, regulations, customs and usages of the State of Illinois, County of Cook, and under color of state law within the scope of his employment.

14. **The IDOC** as an entity organized and existing under the laws and statutes of Illinois. At all material times to this cause of action, Illinois Department of Corrections is the employer of Glenn Austin, are responsible for his wrongful acts of Austin while employed by **IDOC** and was acting within the scope of his employment.

15. Defendant, **Glenn Austin**, at all relevant times, upon information and believe to be a resident of the State of Illinois. **Austin** was at all times material hereto was a duly appointed agent-servant by **IDOC**.

16. Upon information and believe Austin at all times was the warden of **IDOC** hereto this cause

3

of action. The **IDOC** are responsible and can be held liable for his wrongful acts of tis agent-servant,

employee of **IDOC,** while **employed by IDOC** Austin was acting within the scope of his employment,

Austin was performing ministerial acts. Austin sued in his individual capacity.

17. Defendant, Austin, who were duly appointed and anointed with all power and cloaked with

the authority to function under direction of **IDOC** and Glenn Austin and his position and under color and

pretense of the statutes, ordinances, regulations, customs and usages of the State of Illinois. County of

Cook, and under color of state law within the scope of his employment.

18. **IDOC**, an entity organized and existing under the laws and statute of Illinois. At all material

times to this cause of action, **IDOC**, is the employer of Rita Rossi are responsible for her wrongful acts of

Rossi while employed by **IDOC** and was active within the scope of her employment.

19. Defendant, Rossi, at all relevant times, upon information and believe to be a resident of the

state of Illinois. Defendant Rossi was at all times material hereto was a duly appointed decision maker for

the **IDOC** as its apparent agent-servant of **IDOC**.

20. Upon information and believe defendant, Rossi, at all times was agent-servant hereto this

cause of action The **IDOC** are responsible and can be held liable for her wrongful acts of its agent-

servant, employee of **IDOC**, while employed by **IDOC** Rossi was acting within the scope of her

employment. Rossi was performing ministerial acts and Rossi sued in her individual capacity.

21. Defendant, Rossi, who were duly appointed and anointed with all power and cloaked with the

authority to function under direction of **IDOC** and Glenn Austin and his position and under color and

pretense of the statutes, ordinances, regulations, customs and usages of the State of Illinois, County of

Cook, and under color of state law within the scope of her employment.

## F.    FACTS UPON WHICH RELIEF IS CLAIMED

22. In December 2012, plaintiff, Burnyss Perry, an inmate in the custody of the Illinois

Department of Correction, filed a *pro se* petition writ of *mandamus* pursuant to Article 14 of the Code of

Civil Procedure (Code) (735 ILCS 5/14-101 to 14-109 (West 2012)). Plaintiff sought to compel

4

defendants Salvador Godinez, Glenn Austin, and Rita Rossi (collectively, the Department) to credit his sentence 576 days pursuant to the terms of his negotiated guilty plea agreement.

23. The Department filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)), arguing that plaintiff's September 18, 2014, release had been properly calculated. The Department argued further that, were it to apply the credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014.

24. Following a June 2013 hearing, the trial court entered a written order, directing the Department to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014."

25. The Department appealed, and we granted the Department's motion for an emergency stay of the trial court's order and agreed to accelerate our consideration of this appeal. Because we conclude that the Department had a clear, nondiscretionary duty of give effect to the sentencing court's order that plaintiff be awarded 576 days of credit, we affirm the trial court's judgment granting plaintiff's petition for writ of *mandamus*.

26. The controversy in this case arises from the Department's calculation of plaintiff's total term total term of confinement, which was complicated by the trial court's imposition of an additional term of confinement while plaintiff was already serving nine concurrent prison terms.

27. The additional term was ordered to run consecutively to plaintiff's existing concurrent terms, with 576 days of credit applied. To understand how the Department reached its conclusion as to plaintiff's September 18, 2014, projected release date, we review the facts in detail.

28. However, because the record in this *mandamus* action does not include the records from plaintiff's 10 underlying criminal cases, our review of the facts that led to plaintiff's convictions is limited. [2005 Cases.]

29. Prior to November 5, 2008, defendant pleaded guilty to nine counts of theft (720 ILCS 5/16-1(a)(1) (West 2004)) (Cook County case Nos. 05-CR-2600601, 05-CR-2600701, 05-CR-2600801, 05-CR-2600901, 05-CR-2601001, 05-CR-2601201, 05-CR-2601301, and 05-CR-2601401).

30.  On November 5, 2008, a Cook County trial court sentenced plaintiff to seven years' imprisonment on each of the nine separate convictions. The court ordered the nine sentences to run concurrently, for a total term of seven years, and awarded plaintiff 156 days of credit for time served between his arrest and sentencing. [Case no. 08-CR-2252801].

31.  On December 15, 2008, the State filed a 24-count information against plaintiff (Cook County case No. 08-CR-2252801) for various criminal offenses arising from a mortgage fraud scheme he allegedly perpetrated between November 2007 and February 2008-a period of time during which he was released on bond in his earlier nine cases.

32.  On July 14, 2010, plaintiff pleaded guilty in case No. 08-CR-2252801 to one count of theft pursuant to a fully negotiated guilty plea. In exchange for his guilty plea, the State dismissed the remaining charges and recommended a sentence of seven years' imprisonment.

33.  Pursuant to the terms of the guilty-plea agreement, a Cook County trial court sentenced plaintiff to seven years' imprisonment and awarded him 576 days of sentencing credit.  That sentence was to run consecutively to plaintiff s nine existing concurrent sentences. With regard to the 576 days of credit, the court's sentencing order stated as follows:

34.  "The Court finds that the defendant is entitled to receive credit for time actually served in custody for a total credit of 0576 days as of the date of this order[.]" The Department's Execution of the July 14, 2010, Sentencing Order on July 19, 2010, the Department issued plaintiff a new sentence calculation sheet that reflected the addition of the seven-year consecutive sentence term in case No. 08-CR- 2252801 but did not reflect the 576 days of sentencing credit the trial court awarded.

35.  On August 9, 2010, plaintiff filed a formal grievance with the Department "for the Court[-]ordered 576[-]day Jail Credit." The following day, plaintiff s prison counselor denied the grievance and returned it to plaintiff with a notation stating the following:

36.  "The sentencing order does not state to aggregate your jail credits (576, 156 days).  In

6

order for them to be combined you'll need a corrected [sentencing order] stating such. The Records

Office should be contacted by you via request slips if you have further concerns."

37. Plaintiff advanced his grievance through several steps of administrative review that need

not be detailed for purposes of this appeal. On December 1, 2010, the Department's Administrative

Review Board issued plaintiff a response, which read, in pertinent part, as follows: "Per the

offender's [sentencing order] the judge did not order the jail credits of the consecutive cases to be

aggregated, therefore, the sentence calculation has been done correctly."

38. On December 21, 2010, plaintiff filed a motion to amend the sentencing order with the

Cook County trial court, alleging, in pertinent part, the following: That his Honorable Court

granted [plaintiff] 576 days credit for time actually served in custody. That [plaintiff], was informed

by the [Department's] Record Officer that the 576 days credit granted to [plaintiff] by this court

cannot be honored, and will not be calculated within the sentence calculation sheet, unless this

court specifically makes mention of the credit to be aggregated with the consecutive sentence.

39. (See attached Administrative Review Board answer to [plaintiff s] grievance[.]) That

[plaintiff] respectfully request[s] of this Honorable Court to issue a statement within the [sentencing

order] that the 576 days credit is to be aggregated with [plaintiff s] consecutive sentence, in[]order

for [the Illinois Department of Corrections] to credit [plaintiff] for all time served in custody, as

ordered by this court."

40. On January 11, 2011, in response to plaintiff s motion, the sentencing court issued an

amended sentencing order that stated, in pertinent part, as follows: "The Court finds that [plaintiff]

is entitled to receive credit for time actually served in custody for a total credit of 0576 days as of

the date of this order[.]

41. It is further ordered that also consecutive with [Nos.] 05[-]CR[-]2601001 thru 05[-]CR[-

]26016 credit in aggregate nunc pro tune from 7-14-2010[.]" The Department received the amended

sentencing order but did not change plaintiff s projected release date. Later in January, plaintiff

7

asked defendant Rossi, the records office administrator of the Jacksonville Correctional Center, to change his calculation sheet to reflect the amended sentencing order.

42. According to plaintiff s *mandamus* petition, Rossi told plaintiff in person in the records office that "the Judge can't do this!" Plaintiff made additional requests within the Department to have his projected release date changed to reflect the 576 days credit.

43. In a February 17, 2011, letter to Gina Allen of the Office of Inmate Issues, plaintiff stated the following: "My problem now is, the Court corrected the [sentencing order], reflecting [the Department's] policy, ordering the custody credit to be aggregated. However, Rita Rossi within Jacksonville [Correctional Center] Record[s] Office refuse[d] to honor the court's order.

44. Ms. Rossi called me over to the Record[s] Office, and told me personally that the new court[-]ordered [sentencing order] has no impact on her decision-that "the judge cannot do this." Plaintiff sent another letter to Allen a week later, attaching the amended sentencing order.

45. A stamp on that letter indicates that the Office of Inmate Issues received the letter on March I , 2011. A handwritten notation on the letter states, as follows: "This office cannot assist w[ith] this. The judge must make a ruling and send corrected/amendments *[sic ]* to the parent facility."

46. Plaintiff s Petition for Writ of *Mandamus*. In December 2012, plaintiff filed the instant petition for writ of *mandamus* in which he sought "to compel the [Department] to comply with the [trial court's] order and subtract 576 days from the Plaintiff s calculation sheet."

47. In February 2013, the Department filed (1) a motion for summary judgment, (2) a memorandum of law in support of the motion, and (3) an affidavit completed by defendant Rossi describing the calculations used by the Department to reach plaintiff s projected release date of September 18, 2014. In her affidavit, defendant Rossi explained the following calculations the Department used to reach plaintiff s projected release date.

48. Because the Department's elaborate calculations are central to this appeal, we set them

forth in full, as follows: [Plaintiff] was sentenced to seven years['] incarceration for each of his cases [(Nos. 05-CR-2600601 through 05-CR- 2601401)].

49. The sentences were concurrent to one another for a total sentence of seven years. [Citation to exhibit.] [Plaintiff] was sentenced to an additional seven years incarceration in case [No.] 0[8]-CR-2252801. The sentence was consecutive to [plaintiff s] sentences in [case Nos . 05-CR-2600601 through 05-CR-2601401].

50. [Citation to exhibit.] Thus, [plaintiff] has two seven-year sentences for a total of fourteen years; however, he receives day-for-day credit, making his length of incarceration 7 years total.

51. [Citation to exhibit.] In order to calculate an inmate's custody date, the Records Office looks at the date of the Order of Commitment and Sentence and any awarded jail credits. In this case, [plaintiff s] Orders of Commitment and Sentence for his cases 05-CR-600601 through case 05-CR- 2601401 were dated November 5, 2008, and awarded him 156 days of custody credit.

52. Thus, his custody credit of five months and six days (156 days divided by 30 days per month) was subtracted from the date of the Order, November 5, 2008, to reach a custody date of May 29, 2008.

53. [Citation to exhibit.] The custody date of May 29, 2008, is then used to calculate the release date based on the inmate's sentence and any awarded good conduct credits. [Plaintiff s] current projected outdate (or release date) is September 18, 2014.

54. The Illinois Department of Corrections has abused its discretion and disregarded the authority of the circuit court. Because the circuit court has proved the order of 576 days credit and the appellate court affirmed the decision of the circuit court. The defendants were acting beyond the authority of the circuit court because they intentionally failed and refused to honor the circuit court order.

55. This date was reached by taking [plaintiff s] custody date of May 29, 2008, adding his sentence less good conduct credits (seven years), and reaching a projected release date of May 29, 2015. [Citation to exhibit.][Plaintiff] was previously awarded seven months and six days of earned good conduct credits.

56. The seven months and six days are subtracted from the projected release date of May 29, 2015, to reach a new projected release date of October 23, 2014. [Citation to exhibit.] **See Attached hereto as Exhibit "A" incorporated by reference 1 of 24 stated as following.**

## COUNT I

## CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT FOR FALSE IMPRISONMENT

**Against defendant, Illinois Department of Corrections and its apparent agent Glenn Austin, as warden of IDOC**

## UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION 1981 AND 1983 OF THE FEDERAL CIVIL RIGHTS ACT

57. Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 56 above as if set forth fully herein. In Haec Verba.

58. Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

59. Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

60. Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of America, and reside in the Village of Harvey, County of Cook, Illinois.

61. Defendant Glenn Austin, at all times material hereto was duly appointed to **IDOC** as warden of **IDOC** and Austin was acting in his individual capacity and under color of state law within the scope of his employment.

62. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizure.

10

63. It was the right of plaintiff, Burnyss Perry, Guaranteed by Section 1981 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

64. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person within defendant, **IDOC** boundaries to seize Perry for the sole reason that such person was non-white and restrained falsity and refused to release Perry on his actual release date.

65. Defendant, **IDOC**, and its apparent agent, Glenn Austin wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

66. Austin as warden of **IDOC**, and Austin was acting under color of state law at the time the acts were committed described above.

67. Defendant, Austin, acted within the scope of his employment as the warden of **IDOC**, at the time these acts were committed described above.

68. Defendant, Austin, intentionally seized and falsely imprisoned plaintiff for the sole reason that plaintiff were non-white.

69. The seizure of plaintiff by defendant **IDOC** and its apparent agent, Austin, warden was unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

70. Defendant, **IDOC**, and its warden Austin argues that plaintiff's September 18, 2014, release date had been properly calculated.

71. The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the department to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

72. As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully

imprisoned Perry and deprived Perry of his freedom and movement against his will, and suffered, and

continues to suffer, mental anguish, public humiliation and diminished self-esteem.

73. At all times material hereto this cause of action, there was in force a federal law known as the

Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for

the above-described violation of plaintiff's rights under the Fourth Amendment Section 1981.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections**

and its apparent agent as warden, Austin:

For an award of compensatory damages against each defendant in the amount of Three Million

Dollars ($3,000,000.00).

## COUNT II
## CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT
## FOR FALSE IMPRISONMENT
**Against defendant, Illinois Department of Corrections and its apparent agent Glenn Austin,
as warden of IDOC**
## UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION 1981
## AND 1983 OF THE FEDERAL CIVIL RIGHTS ACT

74. Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth

in paragraphs 1 through 54 above as if set forth fully herein. In Haec Verba.

75. Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of**

**Corrections**, of the State of Illinois as follows:

76. Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at

all times material to this cause of action.

77. Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of

America, and reside in the Village of Harvey, County of Cook, Illinois.

78. Defendant Glenn Austin, at all times material hereto was duly appointed to **IDOC** as warden

of **IDOC**, and Austin was acting in his individual capacity and under color of state law within the scope

of his employment.

12

79. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizures.

80. It was the right of plaintiff, Burnyss Perry, Guaranteed by Section 1983 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

81. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person to false imprisonment within defendant **IDOC** boundaries to seized the plaintiff for the sole reason such person were non-white and unlawfully restrained Perry falsity and refused to release him.

82. Glenn Austin as warden of **IDOC**, and Austin was acting under color of state law at the time the acts were committed described above.

83. Defendant, Austin, acted within the scope of his employment as the warden of **IDOC**, at the time these acts were committed described above.

84. Defendant, **IDOC**, and its apparent agent, Glenn Austin, as warden of **IDOC**, intentionally seized plaintiff and false imprisonment him for the sole reason that Perry was non-white.

85. The seizure of plaintiff by defendant **IDOC** and its apparent agent Austin, warden was unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

86. Defendant, **IDOC**, and its apparent agent, Glenn Austin wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

87. Defendant, **IDOC**, and its apparent agent, Glenn Austin, as warden argues that plaintiff's September 18, 2014 had been properly calculated.

88. The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the **IDOC** to "award" [plaintiff] 576 days of credit off his

13

calculated out date of September 18, 2014.

89.  As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and Perry suffered, and continues to suffer mental anguish, public humiliation and diminished self-esteem.

90.  At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights under the Fourth Amendment Section 1981.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent as warden, Austin:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

## COUNT III
## PENDENT CLAIM BASED ON THE LAWS OF ILLINOIS COMMON LAW
## FOR FALSE IMPRISONMENT
### Against defendant, Illinois Department of Corrections and its apparent agent Glenn Austin, as warden of IDOC
## SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C.A. SECTION 1367(c)

91.  Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 54 above as if set forth fully herein. In Haec Verba.

92.  Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

93.  Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

94.  Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of America, and reside in the Village of Harvey, County of Cook, Illinois.

95.  Defendant Glenn Austin, at all times material hereto was duly appointed to **IDOC** as warden of **IDOC**, and Austin was acting in his individual capacity and under color of state law within the scope

14

of his employment.

96.  It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizure.

97.  It was the right of plaintiff, Burnyss Perry, of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

98.  At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person within defendant, **IDOC** boundaries to seize Perry for the sole reason that such person was non-white and restrained falsity and refused to release Perry on his actual release date.

99.  Defendant, **IDOC**, and its apparent agent, Glenn Austin wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

100.  Austin as warden of **IDOC**, and Austin was acting under color of state law at the time the acts were committed described above.

101.  Defendant, Austin, acted within the scope of his employment as the warden of **IDOC**, at the time these acts were committed described above.

102.  Defendant, Austin, intentionally seized and falsely imprisoned plaintiff for the sole reason that plaintiff were non-white.

103.  The seizure of plaintiff by defendant **IDOC** and its apparent agent, Austin, warden was unreasonable and in violation of plaintiff's rights under the Federal Civil Rights Act.

104.  Defendant, **IDOC**, and its warden Austin argues that plaintiff's September 18, 2014, release date had been properly calculated.

105.  The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the department to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

106.    As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and suffered, and continues to suffer, mental anguish, public humiliation and diminished self-esteem.

107.    At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent as warden, Austin:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

## COUNT IV
## CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT
## FOR FALSE IMPRISONMENT
**Against defendant, Illinois Department of Corrections and its apparent agent Salvador Godinez, decision maker of IDOC**
## UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION 1981 AND 1983 OF THE FEDERAL CIVIL RIGHTS ACT

108.    Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 54 above as if set forth fully herein. In Haec Verba.

109.    Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

110.    Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

111.    Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of America, and reside in the Village of Harvey, County of Cook, Illinois.

112.    Defendant Salvador Godinez, at all times material hereto was duly appointed to **IDOC** as decision maker of **IDOC**, and Godinez was  acting in his individual capacity and under color of state law

16

within the scope of his employment.

113. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizures.

114. It was the right of plaintiff, Burnyss Perry, Guaranteed by Section 1983 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

115. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person to false imprisonment within defendant **IDOC** boundaries to seized the plaintiff for the sole reason such person were non-white and unlawfully restrained Perry falsity and refused to release him.

116. Salvador Godinez as decision maker of **IDOC**, and Godinez was acting under color of state law at the time the acts were committed described above.

117. Defendant, Salvador Godinez, acted within the scope of his employment as decision maker of **IDOC**, at the time these acts were committed described above.

118. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker of **IDOC**, intentionally seized plaintiff and false imprisonment him for the sole reason that Perry was non-white.

119. The seizure of plaintiff by defendant **IDOC** and its apparent agent Godinez, decision maker, was unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

120. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

121. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker argues that plaintiff's September 18, 2014 had been properly calculated.

122. The department argued further that, were it to apply credit as ordered by the sentencing

17

court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the **IDOC** to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

123.    As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and Perry suffered, and continues to suffer mental anguish, public humiliation and diminished self-esteem.

124.    At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights under the Fourth Amendment Section 1981.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent, Salvador Godinez as decision maker:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

**COUNT V**
**CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT**
**FOR FALSE IMPRISONMENT**
Against defendant, Illinois Department of Corrections and its apparent agent Salvador Godinez,
decision maker of IDOC
**UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION**
**1983 OF THE FEDERAL CIVIL RIGHTS ACT**

125.    Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 54 above as if set forth fully herein. In Haec Verba.

126.    Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

127.    Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

128.    Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of

America, and reside in the Village of Harvey, County of Cook, Illinois.

129. Defendant Salvador Godinez, at all times material hereto was duly appointed to **IDOC** as decision maker of **IDOC**, and Godinez was acting in his individual capacity and under color of state law within the scope of his employment.

130. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizures.

131. It was the right of plaintiff, Burnyss Perry, Guaranteed by Section 1983 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

132. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person to false imprisonment within defendant **IDOC** boundaries to seized the plaintiff for the sole reason such person were non-white and unlawfully restrained Perry falsity and refused to release him.

133. Salvador Godinez as decision maker of **IDOC**, and Godinez was acting under color of state law at the time the acts were committed described above.

134. Defendant, Salvador Godinez, acted within the scope of his employment as decision maker of **IDOC**, at the time these acts were committed described above.

135. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker of **IDOC**, intentionally seized plaintiff and false imprisonment him for the sole reason that Perry was non-white.

136. The seizure of plaintiff by defendant **IDOC** and its apparent agent, Godinez, decision maker was unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

137. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

138. Defendant, **IDOC**, and its apparent agent, Salvador Godinez as decision maker argues that plaintiff's September 18, 2014 had been properly calculated.

139. The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the **IDOC** to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

140. As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and Perry suffered, and continues to suffer mental anguish, public humiliation and diminished self-esteem.

141. At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights under the Fourth Amendment Section 1983.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent, Salvador Godinez as decision maker:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

**COUNT VI**
**CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT**
**FOR FALSE IMPRISONMENT**
**Against defendant, Illinois Department of Corrections and its apparent agent Rita Rossi,**
**decision maker of IDOC**
**UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION 1981**
**AND 1983 OF THE FEDERAL CIVIL RIGHTS ACT**

142. Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 56 above as if set forth fully herein. In Haec Verba.

143. Plaintiff, Burnyss Perry, by acting pro-se. complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

144. Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

145. Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of America, and reside in the Village of Harvey, County of Cook, Illinois.

146. Defendant Rita Rossi, at all times material hereto was duly appointed to **IDOC** as decision maker of **IDOC**, and Rossi was acting in his individual capacity and under color of state law within the scope of his employment.

147. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizure.

148. It was the right of plaintiff, Burnyss Perry, guaranteed by Section 1981 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

149. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person within defendant, **IDOC** boundaries to seize Perry for the sole reason that such person was non-white and restrained falsity and refused to release Perry on his actual release date.

150. Defendant, **IDOC**, and its apparent agent, Rita Rossi as decision maker, wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

151. Rossi as decision maker of **IDOC**, and Rossi was acting under color of state law at the time the acts were committed described above.

152. Defendant, Rossi, acted within the scope of her employment as decision maker of **IDOC**, at the time these acts were committed described above.

154. Defendant, Rossi, intentionally seized and falsely imprisoned plaintiff for the sole reason that plaintiff were non-white.

21

155.   The seizure of plaintiff by defendant **IDOC** and its apparent agent, Rossi, decision maker was unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

156.   Defendant, **IDOC**, and its decision maker, Rossi, argues that plaintiff's September 18, 2014, release date had been properly calculated.

157.   The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the department to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

158.   As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and suffered, and continues to suffer, mental anguish, public humiliation and diminished self-esteem.

159.   At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights under the Fourth Amendment Section 1981.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent as decision maker, Rossi:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

## COUNT VII
## CAUSE OF ACTION UNDER FEDERAL CIVIL RIGHTS ACT
## FOR FALSE IMPRISONMENT
### Against defendant, Illinois Department of Corrections and its apparent agent Rita Rossi, decision maker of IDOC
## UNDER THE FOURTEENTH AMENDMENT PUSUANT TO SECTION 1983 OF THE FEDERAL CIVIL RIGHTS ACT

160.   Perry repeats, re-alleges, and incorporates herein by reference each of the allegations set forth in paragraphs 1 through 54 above as if set forth fully herein. In Haec Verba.

22

161. Plaintiff, Burnyss Perry, by acting pro-se, complains of defendant, **Illinois Department of Corrections**, of the State of Illinois as follows:

162. Defendant, **IDOC**, an entity organized and existing under the laws and statutes of Illinois, at all times material to this cause of action.

163. Plaintiff, Burnyss Perry, an African American ("Black") citizen of the United States of America, and reside in the Village of Harvey, County of Cook, Illinois.

164. Defendant Rita Rossi, at all times material hereto was duly appointed to **IDOC** as decision maker of **IDOC**, and Austin was acting in his individual capacity and under color of state law within the scope of his employment.

165. It was the right of plaintiff, Burnyss Perry as guaranteed by the Fourth Amendment to the Constitution of the United States, to be secure in his person against unreasonable seizures.

166. It was the right of plaintiff, Burnyss Perry, Guaranteed by Section 1983 of the Federal Civil Rights Acts, to enjoy the full and equal benefit of all laws for the security of his person as was enjoyed by white citizens.

167. At the times of the false imprisonment described above, it was the policy of defendant **IDOC**, and custom and practice of the **IDOC** to subject Black person to false imprisonment within defendant **IDOC** boundaries to seized the plaintiff for the sole reason such person were non-white and unlawfully restrained Perry falsity and refused to release him.

168. Rita Rossi as decision maker of **IDOC**, and Austin was acting under color of state law at the time the acts were committed described above.

169. Defendant, Rossi, acted within the scope of his employment as decision maker of **IDOC**, at the time these acts were committed described above.

170. Defendant, **IDOC**, and its apparent agent, Rita Rossi, as decision maker of **IDOC**, intentionally seized plaintiff and false imprisonment him for the sole reason that Perry was non-white.

171. The seizure of plaintiff by defendant **IDOC** and its apparent agent Austin, warden was

unreasonable and in violation of plaintiff's rights under the Fourth Amendment and Section 1981 of the Federal Civil Rights Act.

172. Defendant, **IDOC**, and its apparent agent, Rita Rossi, decision maker, wrongfully, intentionally, willfully and wantonly restrained plaintiff and unlawfully held Perry beyond his actual release date.

173. Defendant, **IDOC**, and its apparent agent, Rita Rossi, as decision maker argues that plaintiff's September 18, 2014 had been properly calculated.

174. The department argued further that, were it to apply credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014, following a June 2013 hearing, the trial court entered a written order, directing the **IDOC** to "award" [plaintiff] 576 days of credit off his calculated out date of September 18, 2014.

175. As a direct and proximate result of the policy and conduct of defendant, the **IDOC** wrongfully imprisoned Perry and deprived Perry of his freedom and movement against his will, and Perry suffered, and continues to suffer mental anguish, public humiliation and diminished self-esteem.

176. At all times material hereto this cause of action, there was in force a federal law known as the Federal Civil Rights Act 42 USCA Section 1983, which confers upon plaintiff the right to seek redress for the above-described violation of plaintiff's rights under the Fourth Amendment Section 1981.

**WHEREFORE**, plaintiff, Burnyss Perry prays that this Honorable Court to:

Enter a judgment in favor of plaintiff and against defendants, **Illinois Department of Corrections** and its apparent agent, Rossi, as decision maker:

For an award of compensatory damages against each defendant in the amount of Three Million Dollars ($3,000,000.00).

24

## COUNT VIII
## PENDING CLAIM UNDER ILLINOIS COMMON LAW
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

This claim against all defendants, Illinois Department of Corrections, Salvador Godinez, Glenn Austin, Rita Rossi

## SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIM
## PURSUANT TO 28 U.S.C.A. Section 1367(c)

177. Plaintiff repeats, re-alleges and incorporates by reference each of the allegations set forth in paragraph 1 through 54 above as if set forth fully herein. **In Haec Verba**.

178. Illinois law recognizes a cause of action for intentional infliction of emotional distress which make unlawful certain extreme and outrageous conduct that results in severe emotional distress, defendants acted with actual "malice and evil intent" to damage Perry. Defendants' wrongful acts cause emotional distress upon Perry.

179. Defendants, **Illinois Department of Corrections**, by action of its apparent agents, **Salvador Godinez, Glenn Austin, and Rita Rossi** were aware that the malicious and intentional act of defendants wrongfully incarcerated Perry. Defendants wrongful acts caused Perry financial hardship and severe emotional distress.

180. Defendants caused plaintiff extreme and outrageous conduct, including, but not limited to the acts, intentionally cause mental and emotional distress. Plaintiff suffered embarrassment, humiliation as well as severe headaches.

181. Defendant's conduct was extreme and outrageous, that defendants either intended that their conduct inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress, and that defendant's conduct in fact caused severe emotional distress.

182. Defendant's acts was so outrageous and their actions was intentional with malice hate and intent to damage Perry with affirmative, conscious, disregard of specific consequences which are certain to injure Perry.

183. Defendants, **Salvador Godinez, Glenn Austin, and Rita Rossi** conduct show to be motivated by evil intent, or it involves reckless or callous indifference to Perry's protected rights.

Defendants intended that their conduct inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress, and that defendants' conduct in fact caused severe emotional distress.

184. Perry sustained severe emotional distress and he become highly nervous and was forced to seek additional medical attention to relieve constant and severe headaches, loss of appetite;

185. And loss of sleep as result of defendants caused false imprisonment upon plaintiff. Tactics contained allegations of substantial emotional harm.

186. Defendants conduct will be found extreme and outrageous. It goes "beyond all possible bounds of decency" and plaintiff distress will be found severe if "no reasonable person could be expected to endure it."

## CONCLUSION

**WHEREFORE,** plaintiff, Burnyss Perry, prays that this Honorable Court to:

A. Enter an order for an award of compensatory damages to compensate Perry for his lost wages, other economic damages, and emotional pain and suffering in amount of **Five Hundred Thousand Dollars ($500,000.00)** against each defendant.

B. Enter a judgment for punitive damages in the amount of **Five Hundred Thousand Dollars ($500,000.00)** against **Salvador Godinez** jointly and severally with **Glenn Austin, and Rita Rossi**.

**WHEREFORE,** plaintiff, Burnyss Perry prays that this Honorable Court enter an order granting plaintiff's complaint and any other relief this court deems equitable and proper

Respectfully submitted,

**Burnyss Perry**
Plaintiff Acting *pro se*

**Burnyss Perry**
15713 S. LATHROP
Harvey, Illinois 60624
(504) 758-5164

26

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2013 IL App (4th) 130488-U

NO. 4-13-0488

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 8, 2013
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BURNYSS PERRY, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Morgan County |
| SALVADOR GODINEZ, GLENN AUSTIN, and | ) | No. 12MR115 |
| RITA ROSSI, | ) | |
|     Defendants-Appellants. | ) | Honorable |
| | ) | Christopher E. Reif, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court. Justices Appleton and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed the trial court's order granting plaintiff's writ of *mandamus*.

¶ 2    In December 2012, plaintiff, Burnyss Perry, an inmate in the custody of the Illinois Department of Corrections, filed a *pro se* petition for writ of *mandamus* pursuant to article 14 of the Code of Civil Procedure (Code) (735 ILCS 5/14-101 to 14-109 (West 2012)). Plaintiff sought to compel defendants Salvador Godinez, Glenn Austin, and Rita Rossi (collectively, the Department) to credit his sentence 576 days pursuant to the terms of his negotiated guilty plea agreement.

¶ 3    The Department filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2012)), arguing that plaintiff's September 18, 2014,

release date had been properly calculated. The Department argued further that, were it to apply the credit as ordered by the sentencing court, plaintiff's release date would be later than September 18, 2014. Following a June 2013 hearing, the trial court entered a written order, directing the Department to "award [plaintiff] 576 days of credit off his calculated out date of September 18, 2014."

¶ 4        The Department appealed, and we granted the Department's motion for an emergency stay of the trial court's order and agreed to accelerate our consideration of this appeal. Because we conclude that the Department had a clear, nondiscretionary duty to give effect to the sentencing court's order that plaintiff be awarded 576 days of credit, we affirm the trial court's judgment granting plaintiff's petition for writ of *mandamus*.

¶ 5                                I. BACKGROUND

¶ 6        The controversy in this case arises from the Department's calculation of plaintiff's total term of confinement, which was complicated by the trial court's imposition of an additional term of confinement while plaintiff was already serving nine concurrent prison terms. The additional term was ordered to run consecutively to plaintiff's existing concurrent terms, with 576 days of credit applied. To understand how the Department reached its conclusion as to plaintiff's September 18, 2014, projected release date, we review the facts in detail. However, because the record in this *mandamus* action does not include the records from plaintiff's 10 underlying criminal cases, our review of the facts that led to plaintiff's convictions is limited.

¶ 7                                A. 2005 Cases

¶ 8        Prior to November 5, 2008, defendant pleaded guilty to nine counts of theft (720 ILCS 5/16-1(a)(1) (West 2004)) (Cook County case Nos. 05-CR-2600601, 05-CR-2600701, 05-

- 2 -

CR-2600801, 05-CR-2600901, 05-CR-2601001, 05-CR-2601101, 05-CR-2601201, 05-CR-2601301, and 05-CR-2601401).

¶ 9        On November 5, 2008, a Cook County trial court sentenced plaintiff to seven years' imprisonment on each of the nine separate convictions. The court ordered the nine sentences to run concurrently, for a total term of seven years, and awarded plaintiff 156 days of credit for time served between his arrest and sentencing.

¶ 10              B. Case No. 08-CR-2252801

¶ 11        On December 15, 2008, the State filed a 24-count information against plaintiff (Cook County case No. 08-CR-2252801) for various criminal offenses arising from a mortgage fraud scheme he allegedly perpetrated between November 2007 and February 2008—a period of time during which he was released on bond in his earlier nine cases.

¶ 12        On July 14, 2010, plaintiff pleaded guilty in case No. 08-CR-2252801 to one count of theft pursuant to a fully negotiated guilty plea. In exchange for his guilty plea, the State dismissed the remaining charges and recommended a sentence of seven years' imprisonment. Pursuant to the terms of the guilty-plea agreement, a Cook County trial court sentenced plaintiff to seven years' imprisonment and awarded him 576 days of sentencing credit. That sentence was to run consecutively to plaintiff's nine existing concurrent sentences. With regard to the 576 days of credit, the court's sentencing order stated as follows:

> "The Court finds that the defendant is entitled to receive credit for
>
> time actually served in custody for a total credit of 0576 days as of
>
> the date of this order[.]"

¶ 13        C. The Department's Execution of the July 14, 2010, Sentencing Order

- 3 -

¶ 14       On July 19, 2010, the Department issued plaintiff a new sentence calculation sheet

that reflected the addition of the seven-year consecutive sentence term in case No. 08-CR-

2252801 but did not reflect the 576 days of sentencing credit the trial court awarded.

¶ 15       On August 9, 2010, plaintiff filed a formal grievance with the Department "for the

Court[-]ordered 576[-]day Jail Credit." The following day, plaintiff's prison counselor denied the

grievance and returned it to plaintiff with a notation stating the following:

> "The sentencing order does not state to aggregate your jail
>
> credits (576, 156 days). In order for them to be combined you'll
>
> need a corrected [sentencing order] stating such. The Records
>
> Office should be contacted by you via request slips if you have
>
> further concerns."

¶ 16       Plaintiff advanced his grievance through several steps of administrative review

that need not be detailed for purposes of this appeal. On December 1, 2010, the Department's

Administrative Review Board issued plaintiff a response, which read, in pertinent part, as

follows:

> "Per the offender's [sentencing order] the judge did not order the
>
> jail credits of the consecutive cases to be aggregated, therefore, the
>
> sentence calculation has been done correctly."

¶ 17       On December 21, 2010, plaintiff filed a motion to amend the sentencing order

with the Cook County trial court, alleging, in pertinent part, the following:

> "2. That his Honorable Court granted [plaintiff] 576 days
>
> credit for time actually served in custody.

- 4 -

\*\*\*

4. That [plaintiff], \*\*\* was informed by the [Department's] Record Officer that the 576 days credit granted to [plaintiff] by this court cannot be honored, and will not be calculated within the sentence calculation sheet, unless this court specifically makes mention of the credit to be aggregated with the consecutive sentence. (See attached Administrative Review Board answer to [plaintiff's] grievance[.])

5. That [plaintiff] respectfully request[s] of this Honorable Court to issue a statement within the [sentencing order] that the 576 days credit is to be aggregated with [plaintiff's] consecutive sentence, in[]order for [the Illinois Department of Corrections] to credit [plaintiff] for all time served in custody, as ordered by this court."

¶ 18    On January 11, 2011, in response to plaintiff's motion, the sentencing court issued an amended sentencing order that stated, in pertinent part, as follows:

"The Court finds that [plaintiff] is entitled to receive credit for time actually served in custody for a total credit of 0576 days as of the date of this order[.]

\* \* \*

It is further ordered that also consecutive with [Nos.] 05[-]CR[-]2601001 thru 05[-]CR[-]26016 credit in aggregate nunc

- 5 -

pro tunc from 7-14-2010[.]"

¶ 19    The Department received the amended sentencing order but did not change plaintiff's projected release date. Later in January, plaintiff asked defendant Rossi, the records office administrator of the Jacksonville Correctional Center, to change his calculation sheet to reflect the amended sentencing order. According to plaintiff's *mandamus* petition, Rossi told plaintiff in person in the records office that "the Judge can't do this!"

¶ 20    Plaintiff made additional requests within the Department to have his projected release date changed to reflect the 576 days credit. In a February 17, 2011, letter to Gina Allen of the Office of Inmate Issues, plaintiff stated the following:

> "My problem now is, the Court corrected the [sentencing
> order], reflecting [the Department's] policy, ordering the custody
> credit to be aggregated. However, Rita Rossi within Jacksonville
> [Correctional Center] Record[s] Office refuse[d] to honor the
> court's order. Ms. Rossi called me over to the Record[s] Office,
> and told me personally that the new court[-]ordered [sentencing
> order] has no impact on her decision—that "the judge cannot do
> this."

¶ 21    Plaintiff sent another letter to Allen a week later, attaching the amended sentencing order. A stamp on that letter indicates that the Office of Inmate Issues received the letter on March 1, 2011. A handwritten notation on the letter states, as follows:

> "This office cannot assist w[ith] this. The judge must make
> a ruling and send corrected/ammendments [*sic*] to the parent

- 6 -

facility."

¶ 22            D.  Plaintiff's Petition for Writ of *Mandamus*

¶ 23            In December 2012, plaintiff filed the instant petition for writ of *mandamus* in

which he sought "to compel the [Department] to comply with the [trial court's] order and subtract

576 days from the Plaintiff's calculation sheet."

¶ 24            In February 2013, the Department filed (1) a motion for summary judgment, (2) a

memorandum of law in support of the motion, and (3) an affidavit completed by defendant Rossi

describing the calculations used by the Department to reach plaintiff's projected release date of

September 18, 2014.

¶ 25            In her affidavit, defendant Rossi explained the following calculations the

Department used to reach plaintiff's projected release date.  Because the Department's elaborate

calculations are central to this appeal, we set them forth in full, as follows:

            "4. [Plaintiff] was sentenced to seven years['] incarceration

      for each of his cases [(Nos. 05-CR-2600601 through 05-CR-

      2601401)].  The sentences were concurrent to one another for a

      total sentence of seven years. [Citation to exhibit.]

            5. [Plaintiff] was sentenced to an additional seven years

      incarceration in case [No.] 0[8]-CR-2252801.  The sentence was

      consecutive to [plaintiff's] sentences in [case Nos. 05-CR-2600601

      through 05-CR-2601401].  [Citation to exhibit.]

            6. Thus, [plaintiff] has two seven-year sentences for a total

      of fourteen years; however, he receives day-for-day credit, making

- 7 -

his length of incarceration 7 years total. [Citation to exhibit.]

7. In order to calculate an inmate's custody date, the Records Office looks at the date of the Order of Commitment and Sentence and any awarded jail credits.

8. In this case, [plaintiff's] Orders of Commitment and Sentence for his cases 05-CR-2600601 through case 05-CR-2601401 were dated November 5, 2008, and awarded him 156 days of custody credit.

9. Thus, his custody credit of five months and six days (156 days divided by 30 days per month) was subtracted from the date of the Order, November 5, 2008, to reach a custody date of May 29, 2008. [Citation to exhibit.]

10. The custody date of May 29, 2008, is then used to calculate the release date based on the inmate's sentence and any awarded good conduct credits.

11. [Plaintiff's] current projected outdate (or release date) is September 18, 2014. This date was reached by taking [plaintiff's] custody date of May 29, 2008, adding his sentence less good conduct credits (seven years), and reaching a projected release date of May 29, 2015. [Citation to exhibit.]

12. [Plaintiff] was previously awarded seven months and six days of earned good conduct credits. The seven months and six

- 8 -

days are subtracted from the projected release date of May 29, 2015, to reach a new projected release date of October 23, 2014. [Citation to exhibit.]

13. Lastly, [plaintiff] was later awarded an additional one month and five days of earned good conduct credits. Therefore, the one month and five days are subtracted from the projected release date of October 23, 2014, to reach his current projected release date of September 18, 2014.

14. This is [plaintiff's] current projected release date. As shown in the calculation, the 156 days of jail credits have been used to determine the custody date.

15. [Plaintiff] was also awarded 576 days of jail credits in case 08-CR-2252801 from the date of July 14, 2010, in aggregate to the 156 days of credit issued in the other cases. [Citation to amended sentencing order.] In other words, the Order indicated [plaintiff] should receive a total of 732 days of jail credit for time in custody up to July 14, 2010.

16. If this order is followed, [plaintiff's] calculation will result in a release date later than his previous release date. The calculation would be completed, as follows:

a. Per the Order, [plaintiff] would receive credit for 732 days of jail credit (156 plus 576) from

- 9 -

the date of July 14, 2010. 732 days of jail credits equals two years and 12 days of credit (732 divided by 360 days per year).

b. Subtracting two years and 12 days from July 14, 2010, equals a custody date of July 2, 2008.

c. The remainder of the calculation would follow as in paragraphs 11-13 wherein [plaintiff] would have a projected release date of July 2, 2015. [Plaintiff] would then be awarded a total of 8 months and 11 days of earned good conduct credits. Those credits would be subtracted from his projected release date of July 2, 2015, to reach a projected release date.

d. As the projected release date prior to earned good conduct credits in this calculation (July 2, 2015) is later than the projected release date prior to earned good conduct credits in [plaintiff's] current calculation (May 29, 2015), [plaintiff's] final release date would also be later once the earned good conduct credits are factored in.

17. Thus, [plaintiff] is benefitted by using the calculation currently in place and only awarding him 156 days of jail credit

from the date of November 5, 2008.

18. The reason [plaintiff] is not benefitted by awarding him the additional 576 days of jail credits is because he is receiving day-for-day credit for the time served since May 29, 2008.

19. Therefore [plaintiff's] sentence calculation, while not taking into account the 576 days of jail credits, is correct and gives him the soonest possible release date.

20. To calculate [plaintiff's] sentence as he has requested would result in a later release date and does not benefit [plaintiff]."

¶ 26 Defendant filed a memorandum of law in response to the Department's motion for summary judgment in which he argued, in pertinent part, as follows:

"The very nature of the Jail Credit is to remove time from a sentence. *** The Defendant, Rita Rossi, has improperly usurped the authority of the Judge by refusing to execute the Court's order in the manner which it was intended. Thereby imposing the Defendant's will indifferent to the jurisdiction of the Court. This makes the Mandamus essential. [Rossi] has determined that her interpretation of the calculation process is beyond the Judge's jurisdiction. [Rossi] dismissed the Judge's order and has applied the Jail Credit in an improper manner.

The [Department's] error in calculating the Plaintiff's sentence is using a custody date of 7/14/10. The correct custody

- 11 -

date that should have been used to calculate the Plaintiff's sentence is 11/5/2008 ***. It is clear from the plea agreement and the Judge's intent of issuing an amended commitment order, per request of Plaintiff, that the Plaintiff was to receive the *benefit* of having both Jail Credits aggregated. This would only be possible using the custody date of 11/5/08. To use a custody date of 7/14/10 as the Defendant does, usurps the clear intention of the Court. *** The Jail Credit was the crux of the plea agreement, structured by the State['s] Attorney and the Plaintiff's attorney."

(Emphasis in original.)

¶ 27　　In June 2013, the Department filed a supplemental memorandum of law in support of its motion for summary judgment, attaching to it an affidavit completed by Julia A. Bickle, the Department's assistant chief records officer. In the affidavit, Bickle went through the same calculations as did defendant Rossi. Bickle further stated that the Department would provide plaintiff with additional credit against his sentence if he provided "certified documentation indicating the custody dates for which he was awarded time served."

¶ 28　　E. The Combined Hearing on the Department's Motion for Summary Judgment and Plaintiff's *Mandamus* Petition

¶ 29　　At a June 2013 combined hearing, defendant Rossi explained plaintiff's sentencing calculations consistent with the explanation she provided in her affidavit. Defendant appeared *pro se.* Counsel for the Department acknowledged that the amended sentencing order awarded plaintiff 576 days of credit for time served. However, the Department argued that the

- 12 -

court's order did not make clear where the 576 days of credit came from. Because the supreme

court in *People v. Latona*, 184 Ill. 2d 260, 271-72, 703 N.E.2d 901, 907 (1998), held that an

inmate cannot earn two sentence credits for a single day in custody, the Department asserted it

was plaintiff's burden to demonstrate that the 576 days of credit for time served awarded in case

No. 08-CR-2252801 did not come from days in which he was earning day-for-day credit (and

serving sentence) while in custody on case Nos. 05-CR-2600601 through 05-CR-2601401.

¶ 30        The trial court, defendant Rossi, and counsel for the Department engaged in the

following discussion at the hearing:

> "THE COURT: The problem I have is, none of us were
>
> involved in Cook County and this was a negotiated plea. We
>
> agree, right?
>
> [COUNSEL]: Yes.
>
> THE COURT: So the judge up there signed an order that he
>
> was to be given 576 days, and in all of your calculations we're
>
> telling this man you don't get 576 because we're calculating it some
>
> magic way that doesn't include what a judge ordered.
>
> [COUNSEL]: Your Honor, if you order that we add these
>
> 576, then we will do it, but that gives him a later release date.
>
> THE COURT: I disagree. You've got a release date right
>
> now of September 18th, 2014, and you're not giving him credit for
>
> 576 days, when a judge ordered the department to do that, so if I
>
> tell you yes, you have to give him that, then you're going to go back

- 13 -

and try to give him a later release date? That doesn't make sense to me.

[COUNSEL]: It's the way the statutes and the calculations—

\* \* \*

THE COURT: \*\*\* Tell me this. Why doesn't he get the 576?

[ROSSI]: Because the order reads as of the date of this order, *nunc pro tunc* to July 14th, 2010. That's, that's—my hands are tied that's all I can do.

\* \* \*

[COUNSEL]: \*\*\* It's not—he's not to get double credit. He was already in prison. Those 576 days are for time he was in prison serving on the first sentence. The judge is aggregating it back to that arrest date.

\* \* \*

THE COURT: You just told me the Department of Corrections is not giving him credit for the judge's ordered 576 days.

[COUNSEL]: Correct, because it's their policy to give the most beneficial release date.

THE COURT: Where in the statutes does it say you have a

- 14 -

right to ignore the judge's order?

[COUNSEL]: Nowhere, but I believe there is a statute that says without specific dates for custody served he's given the most beneficial calculation. I don't have that statute in front of me.

\* \* \*

THE COURT: [Counsel], apparently by this motion, through what [the Department] told [plaintiff] to do, he contacted the judge, and the judge did amend the [sentencing order], stating yet again, [']yes, I intended for him to get the 576 days credit.[']

[COUNSEL]: Except that they used the July 14th, 2010[,] date. To give him additional credit, they would have had to use the December 2008 date. The order is plain on its face. We're not reading into it.

\* \* \*

THE COURT: Well, the easiest thing to do would be to transfer this up there [(Cook County)] to that judge and have the judge rule on this, because my belief is when the judge received a motion specifically saying [']I'm not getting my 576 days,['] and based upon that the judge amended his [sentencing order], although he might have put in the wrong date, I can't believe for a second the judge wasn't saying yet again [']this was the negotiated plea, this was the intent of what he did.['] Although maybe we don't do it

- 15 -

understanding the parameters of how [the Department] calculates
things, but bottom line is I just can't help but feel [plaintiff] is not
getting what he negotiated for."

¶ 31                        F.  The Trial Court's Ruling

¶ 32        On June 12, 2013, the trial court issued a written ruling that stated, in pertinent
part, as follows:

"The [Department] is correct in the legal standards cited to
the Court.  Mandamus is an extreme remedy and [it] does not
involve the exercise of discretion of judgment.  However, the
denial of time negotiated and ordered by a court is not within the
discretion of the Illinois Department of Corrections.  If the
Department feels it can ignore court orders and negotiated pleas
then the system will surely collapse.  The court believes [plaintiff]
is entitled to affirmative relief, and the Department shall comply
with the court orders and award [plaintiff] an additional 576 days
credit from his current out date of September 18th, 2014."

¶ 33        This appeal followed.

¶ 34                        II.  ANALYSIS

¶ 35        On appeal, the Department argues that plaintiff (1) is not entitled to 576 days of
credit because those days resulted from "double credit" on consecutive sentences and (2) would
have a later release date if the 576 days of credit were applied to his sentence because they would
be calculated from the second sentencing date of July 14, 2010, not the original sentencing date

- 16 -

of November 5, 2008.

¶ 36                A. *Mandamus* Principles and the Standard of Review

¶ 37         Our supreme court recently explained the remedy of *mandamus* in *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17, 989 N.E.2d 165, as follows:

> " '*Mandamus* is an extraordinary remedy used to compel a
> public officer to perform nondiscretionary official duties.'
> [Citations.]  In order to obtain a *mandamus* remedy, the plaintiff
> must establish a clear right to the requested relief, a clear duty of
> the public officer to act, and clear authority of the public officer to
> comply with the order.  [Citation.]  A writ of *mandamus* is
> appropriate when used to compel compliance with mandatory legal
> standards but not when the act in question involves the exercise of
> a public officer's discretion.  [Citation.]"

¶ 38         "Generally, a reviewing court will only reverse a trial court's decision to grant or deny *mandamus* when it is against the manifest weight of the evidence or where the court abused its discretion." *State Board of Elections v. Shelden*, 354 Ill. App. 3d 506, 509, 821 N.E.2d 698, 701 (2004).  "However, where the court's judgment turns solely on a statute's construction, which is a question of law, our review is *de novo*." *Id.*

¶ 39               B.  Plaintiff Is Entitled to 576 Days of Credit

¶ 40         The Department defends its failure to grant plaintiff 576 days of credit by pointing out that, under *Latona*, 184 Ill. 2d at 271-72, 703 N.E.2d at 907, plaintiff is not entitled to receive presentencing custody credit for the days during which he was receiving day-for-day credit on his

sentence in case Nos. 05-CR-2601001 through 05-CR-2601401. However, this argument is of no moment for two separate reasons.

¶ 41    First, if the sentencing court did improperly award the 576 days of credit in violation of the Unified Code of Corrections (Unified Code), as the Department argues, the Department should have sought to correct the sentencing judgment through judicial review (see *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 778 N.E.2d 701 (2002)). It did not. In fact, the 576 days of credit, whether authorized by the Unified Code or not, were part of plaintiff's *negotiated* plea agreement with the State. Although the Department argues that plaintiff has failed to establish when and where he earned the 576 days of credit, this missing piece of information actually places the burden on the Department to establish that plaintiff *did not* actually earn the credits awarded to him by the court. It is not plaintiff's burden to satisfy the Department that the court's otherwise unchallenged order should be followed.

¶ 42    Second, and more important, plaintiff entered a fully negotiated guilty plea premised on the fact that he would be awarded 576 days of credit. Under the principles of *People v. Whitfield*, 217 Ill. 2d 177, 840 N.E.2d 658 (2005), due process entitles plaintiff to 576 days off his sentence. Regardless of the label the trial court used to describe the 576 days, the intent of the State, plaintiff, and the court was for plaintiff to receive a term of seven years, less 576 days. Such a term was within both the statutory range and the sentencing court's discretion. See 720 ILCS 5/16-1(b)(6) (West 2008) (class 1 felony); 730 ILCS 5/5-4.5-30(a) (West 2008) (nonextended 4 to 15 years).

¶ 43    If the Department believed the 576 days of credit were the product of improper double crediting by the sentencing court, it should have sought redress in a court of law. Instead,

- 18 -

the Department simply refused to give effect to the trial court's order because it concluded that doing so would constitute double crediting. When the trial court amended its order to aggregate the 576 days of credit with plaintiff's earlier cases, as the Department initially claimed was necessary, the Department again refused to comply with the court's amended order.

¶ 44     In this case, plaintiff entered a *fully negotiated* guilty plea with an understanding that he would get 576 days of credit applied to his sentence. The State agreed to the terms of that plea and did not seek judicial review of the trial court's sentencing order. The Department's subsequent calculations deprived plaintiff of the benefit of his bargain with the State. After plaintiff complained, the Department informed him what the sentencing court needed to do to grant him the relief he requested. Plaintiff petitioned the sentencing court, the same court that accepted his negotiated guilty plea, to enter an order as the Department instructed. The court followed the Department's instructions and issued an amended sentencing order. The State did not challenge that order, nor did the Department seek any type of judicial relief. Instead, the Department simply declined to follow the sentencing court's order and again refused to apply the 576 days of credit in a manner that would give plaintiff the benefit of his bargain.

¶ 45     The Department has a nondiscretionary duty to comply with the amended sentencing order in this case. If the Department's position is that plaintiff's 576 days of credit are void because they were awarded in violation of the Unified Code (see, *e.g.*, *People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995) (a sentence which does not conform to a statutory requirement is void)), the remedy is not to simply administratively strike those credits from plaintiff's negotiated sentence. Such an approach clearly violates the principle of separation of powers and plaintiff's right to due process. See *Whitfield*, 217 Ill. 2d at 189, 840 N.E.2d at 666

- 19 -

("[I]f a defendant shows that his plea of guilty was entered in reliance on a plea agreement, he may have a due process right to enforce the terms of the agreement.").

¶ 46        Whether the terms of a negotiated sentence are lawful or not, due process requires that a criminal defendant either (1) receive the benefit of the bargain of the negotiated plea or (2) be allowed to withdraw his plea if it was premised on a bargain the law prohibits. *Whitfield*, 217 Ill. 2d at 202, 840 N.E.2d at 673. In *Whitfield*, the court described the remedy it afforded to the inmate in *Roe*, 201 Ill. 2d at 557, 778 N.E.2d at 704, as follows:

> "After finding that the sentence, which had been imposed pursuant
> to a plea agreement, violated the law and, therefore, was void, we
> held that an 'equitable solution' would be to modify the sentence to
> one which defendant proposed and which would approximate the
> penal consequences contemplated by the original plea agreement."
>
> *Whitfield*, 217 Ill. 2d at 205, 840 N.E.2d at 675.

Here, the trial court in this case granted appropriate relief to plaintiff by ordering the Department to "award [plaintiff] 576 days of credit off his calculated out date of September 18th, 2014."

¶ 47        Pursuant to *Whitfield*, due process requires that plaintiff's sentence reflect the conditions of his negotiated guilty plea. If the Department determines plaintiff's sentence is void, it may not engage in self-help measures to correct the sentence as it sees fit. Although such an approach might expeditiously solve the Department's problems with the sentence, it fails to account for the due process implications of administratively altering the terms of a negotiated plea agreement. The Department must either honor the court's sentencing order or seek judicial review of the order in a forum that will properly take into account the inmate's due process rights.

The records office of the penitentiary is not a proper forum.

¶ 48        C.  The Effect of the Sentencing Court's *Nunc Pro Tunc* Order

¶ 49        The Department's assertion that plaintiff's release date would be later if the 576 days were applied to his sentence is based on the trial court's amended sentencing order, which reads, "credit in aggregate nunc pro tunc from 7-14-2010."  The Department interprets this *nunc pro tunc* order as directing that the 576 days be calculated from July 14, 2010, using the Department's sentence calculation formula.  Such an interpretation, the Department concedes, would result in a later release date for plaintiff than if the 576 days were not even added.  Given its interpretation, the Department has done nothing with the 576 days credited to plaintiff in the original and amended sentencing orders.

¶ 50        *"Nunc pro tunc"* means "[h]aving retroactive legal effect through a court's inherent power."  Black's Law Dictionary 1100 (8th ed. 2004).  The sentencing court's original sentencing order in case No. 08-CR-2252801 was entered on July 14, 2010.  In January 2011, the court entered an amended order after plaintiff explained in a formal, written motion that the Department told him the 576 days "will not be calculated within the sentence calculation sheet, unless this court specifically makes mention of the credit to be aggregated with the consecutive sentence."  In the amended sentencing order, the court (1) ordered plaintiff's 576 days of credit to be aggregated with his previous cases and (2) included the language, "nunc pro tunc from 7-14-2010."  We find it obvious that the court's use of the term "nunc pro tunc" was intended only to indicate that the order being amended was the original July 14, 2010, sentencing order.  Nowhere else on the January 2011 amended order does it identify the order being amended.

¶ 51        D.  The Proper Calculation of Defendant's Sentence

- 21 -

¶ 52      The Department's assertion that plaintiff's 576 days of credit, if applied, must be

calculated from the second sentencing date of July 14, 2010, is erroneous because (1) the

Department misinterprets the effect of the sentencing court's amended order stating "nunc pro

tunc from 7-14-2010" and (2) the Department fails to treat defendant as if he "had been

committed for a single term." See 730 ILCS 5/5-8-4(g) (West 2010).

¶ 53      Section 5-8-4(g) of the Unified Code (730 ILCS 5/5-8-4(g) (West 2010)) provides

as follows:

> "(g) Consecutive terms; manner served. In determining the
>
> manner in which consecutive sentences of imprisonment, one or
>
> more of which is for a felony, will be served, the Department of
>
> Corrections shall treat the defendant as though he or she had been
>
> committed for a single term ***."

The Department argues, per the *nunc pro tunc* order, it must calculate the single 7-year term (the

14-year total sentence on all of plaintiff's cases, less day-for-day good conduct credits) from July

14, 2010. Counting backward from July 14, 2010, by 732 days (576 credit days aggregated with

156 credit days), the Department would give plaintiff a "custody date" of July 2, 2008. The 7

years would then be added to that date. Then 8 months and 11 days would be subtracted to

reflect the good-conduct credits plaintiff earned in Department custody, resulting in a release date

later than the Department's current project release date of September 18, 2014.

¶ 54      However, because section 5-8-4(g) requires the Department to treat plaintiff as if

he were serving a single sentence, the Department should have aggregated the sentencing credits

from all plaintiff's cases (156 days plus 576 days, to equal 732 days) and counted backward from

- 22 -

plaintiff's first sentencing date of November 5, 2008, then added 7 years, then subtracted the credits plaintiff earned for good conduct. This result would have (1) complied with section 5-8-4(g), (2) given the intended effect to the amended sentencing order, and (3) granted plaintiff the benefit of the bargain resulting from his plea agreement with the State. The Department had no discretion to calculate plaintiff's sentence in a manner clearly contrary to the court's order.

¶ 55        We conclude that plaintiff has established a clear right to the relief requested, specifically, that the length of his total term of imprisonment be reduced by 576 days. The Department had a clear duty to give effect to the sentencing court's amended order granting plaintiff such relief. Because the amended sentencing order has never been challenged or declared void in a court of law, the order is enforceable and it gives the Department clear authority to grant plaintiff the relief requested.

¶ 56        As a final matter, we take this opportunity to note that, as to the issue of improperly awarded credit for time served, defendant Rossi testified at the combined hearing, as follows:

> "[T]his happens very, very, very often in Cook County when they
> go to court and get another consecutive case. They're ordering the
> dates that he was in county jail—or I mean that he was in
> Department of Corrections, I mean. That's a very, very common
> sentence for us."

If Rossi is correct that Cook County courts improperly award credit for time served "very, very, very often," and if the Department's policy is to ignore such double credits when awarded, the Department, or another appropriate State body, should promptly address the issue. It is possible

- 23 -

that many such credits have been awarded, as was the case here, pursuant to the terms of a negotiated plea agreement, thereby implicating the inmate's due process right to the benefit of the bargain. Plaintiff in this case appears relatively well-educated and particularly capable of navigating the daunting process of administrative review followed by judicial review. Nevertheless, it still took him over three years to obtain the relief we grant him today. Other inmates in plaintiff's position should not have to rely upon the extraordinary remedy of *mandamus* to realize the benefit of the bargain deriving from their negotiated plea agreement with the State.

¶ 57                                   III.  CONCLUSION

¶ 58          For the foregoing reasons, we affirm the trial court's order granting plaintiff's petition for writ of *mandamus*. This order is the mandate of the court, effective immediately. The clerk is directed to transmit copies of this order to the trial court and parties without delay.

¶ 59          Affirmed.